In the Matter of RUTH KATZ, as Administratrix of the Estate of JEANETTE LEVY, Deceased, Respondent, against NEW YORK CITY TEACHERS' RETIREMENT BOARD, Appellant.

Argued May 19, 1943; decided December 2, 1943.

*Robert H. Schaffer, Acting Corporation Counsel (Nicholas Bucci* and *Paxton Blair* of counsel), for appellant. Petitioner's application was not subject to the general provisions of section B20–46.0 of the Administrative Code (L. 1937, ch. 929); her application was governed by the special provisions of section B20–40.0 of that Act which applied specifically to applications for disability retirement. (*Matter of Keily* v. *Teachers' Retirement Board,* 226 App. Div. 99; *Rees* v. *Teachers' Retirement Board,* 247 N. Y. 372; *Matter of McAneny* v. *Board of Estimate,* 232 N. Y. 377; *People ex rel. Casler* v. *Eysaman,* 126 Misc. 853; *Reycroft* v. *City of Binghamton,* 138 Misc. 257.) If a member's right to select an option was meant to continue to such time as she was actually retired by resolution of the Board, there would have been no necessity to adopt language limiting that right to thirty days. The Board meets but once a month and therefore in most cases action cannot be taken until more than thirty days after the medical examination. If the Legislature had intended to grant the member thirty days, or until the adoption of a retirement resolution, it would have been simple to use specific and appropriate language to accomplish that end. But the language of the statute is clear and unambiguous and does not so provide. (*Matter of O'Brien* v. *New York State Teachers' Retirement Board,* 215 App. Div. 220, 244 N. Y. 530; *Rees* v. *Teachers' Retirement Board,* 247 N. Y. 372; *Moorhead* v. *Teachers' Retirement Board,* 134 Misc. 123; *Matter of Creveling* v. *Teachers' Retirement Board,* 255 N. Y. 364.)

*Samuel D. Smoleff* and *Aaron H. Shaffer* for respondent. Petitioner made a valid selection of Option No. 1 before her retirement. (*Matter of O'Brien* v. *New York State Teachers' Retirement Board,* 244 N. Y. 530; *Matter of Creveling* v. *Teachers' Retirement Board,* 255 N. Y. 364; *Matter of Keily* v. *Teachers' Retirement Board,* 226 App. Div. 99.) The interpretation urged by appellant would give the Retirement Board an arbi-

trary discretion to grant or withhold benefits in disability cases. (*Rees* v. *Teachers' Retirement Board*, 247 N. Y. 372.)

LEHMAN, Ch. J. The rights and obligations of members of the Teachers' Retirement Association of the City of New York are defined in Title B of Chapter 20 of the Administrative Code of the City of New York (L. 1937, ch. 929), and the Retirement System must be administered in accordance with the provisions of that title. " All teachers " are " members " of the Teachers' Retirement Association and as " members " of the association are " contributors "; a " beneficiary " means a " person in receipt of a pension, an annuity, a retirement allowance, or other benefit ". (§ B20–1.0.) Upon retirement a " contributor " is entitled to the retirement allowances described in sections B20–44.0 and B20–45.0. These " retirement allowances " include a " pension " and in addition " an annuity * * * which shall be the actuarial equivalent of his accumulated deductions ". A " contributor " is not, however, compelled " to receive on retirement his benefits in a retirement allowance payable throughout life ". He may " at any time " file with the Retirement Board " his election to receive on retirement his benefits in a retirement allowance payable throughout life or to receive the actuarial equivalent of his * * * retirement allowance in a * * * lesser retirement allowance, payable throughout life," with a provision that the balance of such actuarial equivalent be paid upon his death to his estate or shall be paid to a person nominated by him in accordance with one of the four options specified in the statute. (B20–46.0.) Since only a " contributor " has the right to file his election " at any time," and since a teacher ceases to be a " contributor " and becomes a " beneficiary " after retirement and receipt of retirement benefits, we assume that the right to file an election does not survive after retirement is complete.

The problem presented upon this appeal is whether Jeannette Levy, a teacher in the public schools of the city of New York and a member of the Teachers' Retirement Association from 1917 till 1942, who was retired by resolution of the Retirement Board on April 28, 1942, filed her election while she was still a " contributor " and before she became a " beneficiary " as those terms are defined in the statute. On January 26th the Board of Education of the City of New York by formal resolu-

tion requested the Retirement Board to retire her for disability. Section B20–42.0 of the Administrative Code provides: " Retirement; for Disability.— Upon the application of the head of the department in which a contributor is employed, or upon the application of such contributor or of one acting in his behalf, such board shall retire such contributor for disability, provided the medical board, after a medical examination of such contributor made by the medical board or by a physician or physicians designated by the medical board  *  *  *  shall certify to such board that such contributor is physically or mentally incapacitated for the performance of duty and that such contributor ought to be retired, and, provided further, that such contributor has had ten or more years of city-service." She attempted to file her election more than thirty days after the medical examination required by the statute had been made, but before the Retirement Board had taken any action to retire the contributor. The Retirement Board rejected the election on the ground that it was made after the " effective date " of retirement.

The medical examination was made at the teacher's home on March 28th by a physician designated by the Medical Board, and after such examination the Medical Board pursuant to the statute, certified to the Retirement Board that the contributor was incapacitated for the performance of duty " and that such contributor ought to be retired." On April 10th the contributor received the following letter or notice from the Retirement Board:

" *April 10, 1942*

TEACHERS' RETIREMENT SYSTEM
of the
City of New York

Notice of Prospective Retirement

Miss Jeannette Levy,
785 Park Avenue,
New York City.　　　　　　　　　　Public School 92
　　　　　　　　　　　　　　　　　　　Borough of Manhattan

Dear Madam:

*Your retirement from active service* in the position of teacher in the Department of Education *will be listed on the*

*calendar for action by the Retirement Board at its meeting to be held April 28, 1942* subject to receipt of salary record from the Board of Education, and verification of salary deductions and service.

Your retirement is scheduled to take place as of April 1, 1942.

Under the law governing the operation of the retirement system, you may receive either the maximum retirement allowance or convert all or part of it into an allowance payable in accordance with certain options which you may elect *prior to the time of your retirement.* The options permit you to use the reserve on your allowance for the purchase of a smaller allowance, with a provision covering you by life insurance for the benefit of your family or estate, or, with a provision under which all or part of your allowance will be continued to some member of your family or other beneficiary should you die before such other person. Blanks upon which such options may be elected and information regarding the same may be obtained from the office of the Retirement Board.

An option cannot be selected or canceled after the effective date of your retirement. This is to remind you that you have selected the maximum retirement allowance without optional modification.

Very truly yours,<br>LOUIS TAYLOR,<br>*Secretary, Retirement Board."*

[Italics are new.]

Until the contributor received that letter she had not given the Retirement Board notice that she had " selected the maximum retirement allowance without optional modification " as stated in the letter, nor had she filed an election to receive a lesser allowance payable throughout life with provision for payment of the balance of the actuarial equivalent of her retirement benefit to her estate or to a person nominated by her in accordance with one of the options offered to a contributor in section B20–46.0. At that time she was still a contributor and under the statute still had a right to file an election. So the letter informed her, and it gave her notice, too, that the election must be filed before " the effective date of [her] retirement." The Medical Board under the statute has

power to certify only that the contributor " *ought* to be retired." The statute places upon the Retirement Board the function and duty to retire the applicant after the examination is made. The letter gave notice to the contributor that her " retirement from active service * * * will be listed on the calendar for action by the Retirement Board at its meeting on April 28, 1942 " and that such " retirement is scheduled to take place as of April 1, 1942." The date of April 1st had passed, and though the medical examination by a physician designated by the Medical Board had been held four days before that date, it does not appear whether or not the Medical Board had on or before that date certified to the Retirement Board that the contributor " ought to be retired."

Whether or not the Medical Board had so certified is immaterial. The Retirement Board had not exercised the retiring function vested in it, and concededly both on that date and on April 10th, when the letter was sent, the contributor's retirement was not yet accomplished. The contributor filed her election to receive the actuarial equivalent of her retirement allowance in accordance with Option I, as provided in section B20–46.0, before the time when, according to the notice, the retirement was listed for action by the Retirement Board. At the appointed time the Retirement Board, it is said, " approved " the teacher's retirement — " said retirement *to be effective as of April 1, 1942* on a maximum retirement allowance without optional modification."

The statute vests the retiring function in an officer or board when it commands that the officer or board " shall retire " a member of the civil service of the State or of a municipal corporation when conditions specified in the statute are proven. The statute may leave little or no room for discretion in the exercise of the retiring function. Nonetheless, retirement is not complete until the statutory command had been obeyed and the retiring function has been exercised. That rule has been consistently followed in every case where the question has been presented to this court. In *Matter of Keily* v. *Teachers' Retirement Board* (226 App. Div. 99) the Appellate Division of the First Department held that, under the provisions of the Greater New York Charter, section 1092, subdivision L, paragraph 1 (now § B20–42.0 of the Administrative

Code), retirement does not become effective until the Retirement Board exercises the retiring functions '' vested in it, and that a teacher might file an election at any time before the Retirement Board had acted upon the certificate of the Medical Board. The Retirement Board does not now challenge the correctness of that decision under the provisions of the statute as it existed at the time when the teacher in that case filed her election. The Board maintains that while the case was pending in the Appellate Division, the Legislature adopted a new statutory rule that '' in case of disability retirement, the effective date of retirement shall be the date of the medical examination or such other date within thirty days subsequent to the medical examination as shall be mutually agreed upon by the contributor and retirement board.'' (L. 1929, ch. 513.) We must now determine the scope and effect of that statute.

The Retirement System of the City of New York in substantially its present form was created by the Legislature by chapter 303 of the Laws of 1917. That statute introduced into the Greater New York Charter a new section, 1092, entitled ''Public School Teachers' Retirement Fund.'' The provisions of that section of the charter as thereafter amended were transferred in 1937 to title B of chapter 20 of the Administrative Code. The provisions of subdivision L, paragraph 1, were transferred without change to section B20–42.0 of the Administrative Code entitled '' Retirement: for disability.'' Subdivision O of section 1092 of the Greater New York Charter as amended by chapter 784 of the Laws of 1920, provided that '' a contributor may *at any time* '' file with the board of retirement his election to receive on retirement his benefits in a retirement allowance payable throughout life or to receive the actuarial equivalent of the value of his annuity, his pension or his retirement allowance payable throughout his life, with the provision that the balance of such actuarial value be paid to his estate or to a person nominated by him in manner described in options defined by the statute. The statutory provision that the contributor may *at any time* file his election was transferred without change to section B20–46.0.

The Charter section as it existed prior to 1929 provided in subdivision N that upon the death of a contributor '' *before retirement* '', death benefits therein described must be paid

to his estate or to a person nominated by him. The same section of the Charter provided in subdivision O for benefits *on retirement,* and the right to file an election " at any time " was, as we have said, part of that subdivision and *applied only to the options therein defined.* By chapter 513 of the Laws of 1929 the Legislature inserted a new subdivision, N-1, between subdivisions N and O. The new subdivision created a right which a contributor had not previously enjoyed, whereby " upon the death of a contributor (1) before retirement, or (2) within thirty days after the effective date of his service retirement, or within thirty days after the filing of his application for disability retirement, in lieu of any retirement allowance, or optional benefit, or any death benefit, there shall be paid to his estate or to such person as he shall have nominated  *  *  * " sums of money calculated in manner specified in that subdivision. *The same subdivision contains the definition of the effective date of retirement upon which the appellant Retirement Board relies.* The provisions of that subdivision, including the definition of the effective date of retirement, have been transferred to section B20–40.0 of the Administrative Code entitled " Special death and retirement benefits."

That definition was, it seems plain, intended to supplement references to the ", effective date " of retirement in other parts of the same subdivision of section 1092 of the Charter, and to fix for administrative purposes what otherwise would have been doubtful and would have required judicial construction. If, as the appellant contends, the Legislature intended that this definition should change the time when retirement for disability in accordance with the provision of section B20–42.0 becomes complete, and thus should limit the time for choice of an option in accordance with the provisions of section B20–46.0 to the period within thirty days after the medical examination, it failed to formulate its intention in language which could be easily understood by a contributor. We find it difficult, if not impossible, indeed, to discern in the statute a legislative intent to deprive the Board, by implication, of the retiring functions expressly conferred upon that Board in section B20–42.0, or to limit by implication the time when a contributor may file his election, though the statute which creates the right expressly provides that he may file his election " at any time ". The date of the medical examination is the statutory " effective

date '' of disability, unless the Board agrees to another date within thirty days subsequent to the examination. The medical examination is, under the statute, made by one or more physicians designated by the Board. The function of these physicians is confined to making the examination. They advise the Medical Board. Their opinion of the mental or physical capacity of the contributor whom they examine may be accepted by the Medical Board or rejected by the Board. The medical examination is solely for the information of the Medical Board and serves no other purpose. Two other steps remain before retirement is accomplished. Even if the medical examination discloses that the contributor is incapacitated for the performance of his duties, the Medical Board must so certify and must certify, too, that the contributor '' ought to be retired ''; and then the Retirement Board must act upon that certificate. If the Legislature had provided that the effective date of disability retirement shall be the date of the certificate of the Medical Board, there might be some basis for an argument that it intended that retirement should be accomplished by the filing of that certificate, even though the Legislature failed to amend at the same time the statute which provides that *the Retirement Board* '' shall retire '' for disability. There can be no reasonable basis for any argument that the Legislature intended that retirement should be accomplished when the medical examination has been made, repealing by implication the requirement of certification thereafter by the Medical Board of action to the Retirement Board.

The legislative intention to leave unchanged the manner in which the retirement should be accomplished is clear. Until that time, it is also clear that '' the contributor '' has not become a '' beneficiary.'' Administrative efficiency may at times require that after application to retire a teacher for disability has been made by the appropriate authority, and after a medical examination has been made, the teacher should not be permitted to teach; and the Legislature might reasonably provide that when the retirement is thereafter accomplished, the effective date of retirement should, for administrative purposes, be retroactively fixed at the date when the examination was made unless the Retirement Board and the contributor agree upon another date within thirty days subsequent to the date of examination. Even

if the language of the statute were open to a construction that in the interval between the statutory effective date of retirement and the actual accomplishment of retirement, a contributor should no longer have any right to file an election, it would be patently unreasonable to give such construction to a statute which provides that the effective date of retirement shall be the date of the medical examination or such other date within thirty days subsequent to the medical examination as shall be *mutually* agreed upon by the contributor and the Retirement Board. Under that construction the Board by refusing to agree to any other date could render almost illusory the right of election of a teacher retired for disability.

It is argued, however, that the Retirement Board has by Regulation F afforded a contributor reasonable time within which to select the effective date of retirement and to file his election. That regulation purports to confer upon the contributor the right to select the date of the medical examination as the date of retirement or any date within thirty days thereafter. Pursuant to the provisions of that regulation the Retirement Board recognizes an election filed by a contributor within thirty days after the medical examination unless the contributor has previously selected an earlier date for retirement. Assuming, arguendo, that the Board might, by regulation, make a general rule to apply in all cases where the Legislature had vested discretion in it (but cf. *Matter of O'Brien* v. *N. Y. State Teachers' Retirement,* 215 App. Div. 220, affd. 244 N. Y. 530), it remains true that the Legislature did vest in the Board the *power* in each case to agree or to refuse to agree to the choice of a date later than the medical examination, and the Legislature could not reasonably have intended to grant such power if the right to file an election is thus made dependent upon the choice of the Board.

That right of election may be very valuable to a teacher who has been retired for disability. A retirement allowance terminating with death would be of little value to many teachers who are retired for disability, and for that reason the statute gives to a teacher the right to elect to take a smaller retirement allowance with a death benefit which will accrue upon her death. At times that election cannot be made intelligently until the teacher has been informed whether as a result of the examina-

tion it appears that in fact she is incapacitated and will be compelled to retire. A teacher has not received that information authoritatively at the time of the medical examination. The statute does not even require that the medical examination be made by the Medical Board. It may be made by a physician appointed by the Board and it has no effect (§ B20–42.0) except as one step toward certification thereafter by the Medical Board that the teacher is incapacitated.

There can be no possible doubt that at least until then the status of a contributor who is retired for disability either upon her own application or upon the application of the head of the department remains unchanged. There can be no doubt that a teacher is, at the time of the medical examination, a " contributor," and since the statute gives a contributor the right to file an election " at any time ", by the plain language of the statute, an election, filed thereafter but before retirement is complete, is timely. The Legislature has said that the date of the medical examination may retroactively become the " effective date " of retirement when the retirement is effected, but the Legislature has not said that rights which have accrued in the interval may be made void retroactively. Since the petitioner's intestate filed her election before the Retirement Board had, in accordance with the mandate of the statute, retired her, she was at that time still a contributor, and the Board was bound to give effect to her election.

The order should be affirmed.

LOUGHRAN, RIPPEY and DESMOND, JJ., concur; LEWIS and CONWAY, JJ., dissent; THACHER, J., taking no part.

Order affirmed.