OPINION OF THE COURT
 

 Graffeo, J.
 

 The issue presented by this appeal is whether certain hourly compensation — known as “per session” compensation — earned by teachers in New York City public schools can be added to their base annual salaries for the purpose of calculating their retirement benefits. Under the statutory scheme governing pensions, we conclude that these earnings can be added to the teachers’ pensionable salary base.
 

 New York City teachers can earn additional compensation beyond their base annual pay by voluntarily engaging in what is referred to as “per session” employment, which is paid on an hourly or sessional basis. The collective bargaining agreement between the teachers and defendant New York City Board of Education (BOE) specifies the nature of per session work and sets the applicable rates of pay. In the contract, per session work is described as including such assignments as teaching summer school, evening or adult education classes, or working with various athletic and non-athletic extracurricular programs. Teachers must apply annually for these positions, and the BOE restricts their participation to only one designated activity,
 
 [1]
 
 establishes a compensation ceiling for each activity, mandates the submission of separate time sheets for per session work and compensates teachers for these services by issu
 
 *579
 
 ing checks separate from the teachers’ regular payroll checks. While per session educational programs, particularly summer school sessions, have long been offered, the BOE’s use of such employment has dramatically increased in recent years. The record in this case reveals that per session expenditures by the BOE exceeded $190 million in 1998 and grew to more than $232 million by 1999.
 

 Plaintiffs are a group of New York City public school teachers and the president of their labor union. As salaried employees appointed to regular pedagogical positions, the teachers are members of the New York City Teachers’ Retirement System (NYCTRS). Although the terms and conditions of per session employment are negotiated through collective bargaining, the determination of New York City teachers’ retirement benefits is governed by articles 11, 14 and 15 of the Retirement and Social Security Law and title 13 of the Administrative Code of the City of New York. A significant component in the computation of their retirement benefits is the average salary received during the final years of service.
 

 Beginning in the late 1990s, the teachers began to submit notices of claim demanding that their per session earnings be treated as pensionable compensation, which NYCTRS refused to do. Plaintiffs commenced this action in 1998 seeking a declaration that defendants’ exclusion of this income from teachers’ base salary calculations for retirement purposes was contrary to section 13-554 of the Administrative Code and sections 443 (a), 504 and 604 of the Retirement and Social Security Law.
 
 [2]
 
 Eventually both sides moved for summary judgment. Supreme Court ruled in plaintiffs’ favor and ordered defendants to credit all per session compensation earned by NYCTRS members since the inception of the action in the formulation of the teachers’ retirement benefits. The Appellate Division affirmed, finding no basis in the administrative and statutory framework to exclude per session compensation from the computation of pensionable salary. We granted leave to appeal and now affirm.
 

 Defendants initially contend that NYCTRS’ interpretation of the Retirement and Social Security Law, the Administrative Code of the City of New York and the relevant regulations is entitled to deference because it is not irrational and is based upon well-established BOE practices. We reject this
 
 *580
 
 assertion. Determining the intended statutory meaning of “salary” in this case does not require “ “knowledge and understanding of underlying operational practices or entail [ ] an evaluation of factual data and inferences to be drawn therefrom’ ”
 
 (Matter of Gruber [New York City Dept. of Personnel
 
 — Sweeney], 89 NY2d 225, 231 [1996], quoting
 
 Kurcsics v Merchants Mut. Ins. Co.,
 
 49 NY2d 451, 459 [1980]). Rather, we are asked to resolve a question “of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent”
 
 (Matter of Guido v New York State Teachers’ Retirement Sys.,
 
 94 NY2d 64, 68 [1999] [internal quotation marks omitted]). Consequently, de novo review is appropriate.
 

 Defendants argue that per session compensation has been outside the scope of the definition of “annual salary” since the inception of teachers’ retirement plans, and that subsequent legislative modifications of the retirement system — which have not specifically addressed per session compensation — did not adjust benefits to include this type of income. In contrast, plaintiffs contend that per session compensation is a form of regular compensation and therefore pensionable, primarily because per session income is not covered by the exclusions from “annual salary” set forth in the applicable statutes.
 

 Our analysis begins with an overview of the administrative and statutory provisions controlling teachers’ retirement. A system for providing teachers with pensions has existed for almost a century
 
 (see e.g.
 
 L 1917, ch 303;
 
 Matter of Katz v New York City Teachers’ Retirement Bd.,
 
 291 NY 360, 367 [1943]). The Legislature has periodically amended the eligibility requirements for retirement benefits, the extent of monetary contributions by members to the retirement system and the method used to determine the amount of a teacher’s pension upon retirement
 
 (see e.g.
 
 L 1973, ch 382; L 1976, ch 890; L 1983, ch 414). In evaluating whether per session compensation is pensionable, we are guided by several considerations, including the use of the term ““salary” in the progression of NYCTRS statutes and regulations, the legislative intent evidenced in the modifications to the programs and the public policy that precludes artificial inflation of income before retirement.
 

 The Legislature substantially revamped public employment retirement benefits on several occasions since 1971, thereby creating a four-tiered retirement system based on the date an employee joined a particular retirement system
 
 (see
 
 L 1973, ch 382; L 1976, ch 890; L 1983, ch 414). Tier I is the original membership category, dating back to 1917
 
 (see
 
 L 1917, ch 303).
 
 *581
 
 It is found in title 13, chapter 4 of the Administrative Code of the City of New York
 
 (see
 
 Administrative Code § 13-501 [52]). Membership is restricted to teachers who joined the NYCTRS prior to July 1, 1973
 
 (see
 
 Retirement and Social Security Law § 440 [a]). Retirement benefits for Tier I members are calculated using the member’s years of service and the “annual salary eamable” during the year preceding retirement or the “average annual salary earnable during any five consecutive years” selected by the member (Administrative Code § 13-501 [18-a] [b] [1]).
 

 Article 11 of the Retirement and Social Security Law created Tier II
 
 (see
 
 L 1973, ch 382; Retirement and Social Security Law § 440
 
 et seq.),
 
 open to teachers who began teaching on or after July 1, 1973 but prior to July 1, 1976
 
 (see
 
 Retirement and Social Security Law § 440 [a]; § 500 [a]). Tier II pensions are based on years of service and a member’s “final average salary,” defined as “the average salary earned by such a member during any three consecutive years which provide the highest average salary” (Retirement and Social Security Law § 443 [a]). However, if the “salary or wages earned during any year included in the period” exceeds the average of the previous two years by more than 20% that excess amount must be excluded from the salary computation
 
 (id.).
 

 Tiers III and IV came into existence by the enactment of articles 14 and 15 of the Retirement and Social Security Law
 
 (see
 
 Administrative Code § 13-501 [54], [55]; L 1976, ch 890; L 1983, ch 414); Tier III covers members who joined the system between July 1, 1976 and September 1, 1983, and Tier IV covers those who joined after September 1, 1983
 
 (see
 
 Retirement and Social Security Law § 500 [a]; § 600 [a]). Both tiers utilize the same formula for determining pensions, incorporating a “final average salary” component, that is, “the average wages earned *
 
 *
 
 * during any three consecutive years” (Retirement and Social Security Law § 512 [a]; § 608 [a]). The term “wages” is defined as “regular compensation earned by and paid to a member” (Retirement and Social Security Law § 501 [24]; § 601 [Z]). Among its restrictions, a Tier III member’s pension is reduced by 50% of the member’s Federal Social Security benefit
 
 (see
 
 Retirement and Social Security Law § 511 [a]) and any single year salary year increase greater than 10% over the previous two years is excluded from the calculation of “final average salary”
 
 (see
 
 Retirement and Social Security Law § 512 [a]). Tier IV restrictions impose a similar 10% cap on compensation increases
 
 (see
 
 Retirement and Social Security Law § 608
 
 *582
 
 [a]). Tiers III and IV members make a monetary contribution to the retirement system through payroll deductions of a prescribed percentage of annual salary
 
 (see
 
 Retirement and Social Security Law § 517 [a]; § 613 [a]) for a requisite number of years
 
 (see e.g.
 
 Retirement and Social Security Law § 911 [b] [1] [contributions terminate after 10 years of eligible membership]).
 

 Our task is complicated by the fact that the statutes creating Tiers I and II do not define “salary.”
 
 [3]
 
 It is therefore helpful to examine the legislative history of the relevant provisions. The use of the phrase “annual salary” predates the adoption of the NYCTRS — it appears in the predecessor statute establishing the New York City Public School Teachers’ Retirement Fund in 1917
 
 (see e.g.
 
 L 1917, ch 303). Both the Fund and the NYCTRS were “designed to provide an income related to
 
 actual earnings
 
 during employment” (Budget Report, Bill Jacket, L 1971, ch 503, at 10 [emphasis added]), indicating pensionable income was intended to include more than just anticipated base salary.
 

 The practice of including certain one-time or lump-sum items of compensation, such as sick leave payments, termination pay and credits for unused vacation, to enhance final salary prior to retirement, led to legislative action curbing such perceived abuses. In 1971, the Legislature explicitly excluded certain types of payments from a member’s salary base
 
 (see
 
 L 1971, ch 503, § 19; Retirement and Social Security Law § 431).
 
 [4]
 
 Retirement and Social Security Law § 431 provided that “the salary base for the computation of retirement benefits” for all publically funded retirement systems shall not include:
 

 “1. lump sum payments for deferred compensation, sick leave, accumulated vacation or other credits for time not worked,
 

 
 *583
 
 “2. any form of termination pay,
 

 “3. any additional compensation paid in anticipation of retirement, or
 

 “4.
 
 that portion of compensation earned during any twelve months included in such salary base period which exceeds that of the preceding twelve months by more than twenty per centum.”
 

 Per session compensation is unlike exclusions one through three since those categories of payment are generally associated with service termination. Category four would, however, limit pensionable compensation to the extent that the addition of per session income exceeds the statutory cap.
 

 Because these exclusions and the use of the term “salary” in section 13-501 (18-a) of the Administrative Code and section 443 (a) of the Retirement and Social Security Law address the same subject matter — the types of compensation and payments that are includable in the computation of retirement benefits — it is necessary to construe these provisions in a manner that “accord [s] respect to the[ir] interlocking and interrelated features”
 
 (Anglin v Anglin,
 
 80 NY2d 553, 558 [1992];
 
 see e.g. Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington,
 
 97 NY2d 86, 91 [2001]). The Legislature’s exclusion of particular forms of compensation or payments from the pension calculus implicates a long-settled principle of statutory construction: where the Legislature lists exceptions in a statute, items not specifically referenced are deemed to have been intentionally excluded
 
 (see Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health,
 
 84 NY2d 252, 262-263 [1994]). Applying this canon of construction in these circumstances, we conclude that by failing to exclude per session compensation when it enacted Retirement and Social Security Law § 431, the Legislature evidenced an intent to allow per session compensation to be includable for pension purposes.
 

 A similar intent can be discerned in the statutes creating Tiers III and IV. They define “final average salary” as “wages” (Retirement and Social Security Law § 512 [a]; § 608 [a]), which in turn means “regular compensation” (Retirement and Social Security Law § 501 [24]; § 601 [Z]). Two common meanings of “regular” are “recurring or received at stated, fixed or uniform intervals” and “constituted, selected, conducted, made, or otherwise handled in conformity with established or prescribed usages, rules, or discipline” (Webster’s 3d New Intl Dictionary
 
 *584
 
 1913). Under these definitions, the nature and implementation of per session activities
 
 (see
 
 New York City School Chancellor Reg C-175) can be deemed “regular.”
 
 [5]
 
 Moreover, because the BOE utilizes per session activities to provide legally-mandated educational instruction and commits vast monetary resources to provide those important services, it is evident that per session programs have become ingrained as fundamental, “regular” components of the New York City system of public education.
 

 This interpretation is consistent with the per session practices of the New York State Teachers’ Retirement System, which covers teachers in public schools outside of the City of New York. The applicable statutes for that system, similar to Tiers III and IV of the NYCTRS, use the terms “annual compensation” and “regular compensation” in defining “final average salary”
 
 (see
 
 Education Law § 501 [11] [a], [b]). The parties acknowledge on this appeal that the State TRS treats per session compensation as pensionable. Defendants present no reasonable basis justifying the disparate treatment of per session compensation by the NYCTRS and the State TRS, and our review of the NYCTRS statutory provisions reveals no reason to do so.
 

 The inclusion of per session compensation in pensionable salary is also not inconsistent with the long-standing public policy prohibiting the inflation of earnings in the final years of public service
 
 (see e.g. Abbatiello v Regan,
 
 205 AD2d 1027, 1028,
 
 lv denied
 
 84 NY2d 808 [1994]). Defendants do not dispute that per session employment legitimately fulfills the BOE’s educational obligations and provides students with needed services and extracurricular activities. It is clearly not a scheme designed to funnel additional compensation to soon-to-be retiring teachers in order to circumvent the strictures of the retirement system. As noted by the courts below, the potential for abuse is significantly curtailed by the regulations of the Chancellor of the New York City School Board
 
 (see
 
 New York City School Chancellor Reg C-175 [5], [6]), the BOE’s continuing oversight of the per session system and the statutory provisions that restrict increases in annual salary over previous
 
 *585
 
 years
 
 (see
 
 Retirement and Social Security Law § 431 [4]; § 512 [a]; § 608 [a]). Thus, the highly regulated nature of per session activities prevents artificial manipulation of total compensation in the preretirement period.
 

 Defendants’ remaining arguments, including their claim that estoppel bars any relief for plaintiffs, are unpersuasive. Thus, New York City public school teachers who are members of the TRS are entitled to have per session compensation included as “salary” for the purpose of calculating retirement benefits. The Supreme Court judgment, affirmed by the Appellate Division, did not provide teachers with retroactive relief. Those members who do not opt out under the terms of the judgment, thereby seeking inclusion of per session income earned since the commencement of this action, must reimburse NYCTRS for any contributions mandated by their retirement tier. Teachers who wish to prospectively include per session income in their salary base will likewise need to make contributions to NYCTRS if pension contributions are otherwise required.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Wesley and Rosenblatt concur; Judge Ciparick taking no part.
 

 Order affirmed, with costs.
 

 [1]
 

 . Teachers may participate in more than one per session activity by obtaining a waiver from the BOE and may claim retention rights to a particular activity after two consecutive years of satisfactory performance.
 

 [2]
 

 . Plaintiffs withdrew their request for class certification in exchange for defendants’ promise to extend any benefits derived from this action to other eligible NYCTRS members.
 

 [3]
 

 . We reject defendants’ contention that the Administrative Code’s definition of “teacher” supports their narrow construction of “salary.” NYCTRS membership is open to “teachers,” which refers, in part, to those employees of the New York City Board of Education who are “appointed to regular positions in the service of the public schools at annual salaries” (Administrative Code § 13-501 [7] [a]). Although it is true, as plaintiffs concede, that “salary” is used in that context to mean a fixed annual rate of compensation distinct from work performed on a hourly basis and that “regular positions” corresponds to a teacher’s primary pedagogical assignment, the definition of “teacher” in this provision was intended to identify only those individuals who are eligible for NYCTRS membership.
 

 [4]
 

 . This statute would prove to be the first in a series of major legislative revisions to the NYCTRS in response to fiscal crises which ultimately led to the creation of Tiers II, III and IV
 
 (see generally Kleinfeldt v New York City Empl. Retirement Sys.,
 
 36 NY2d 95, 100 [1975]).
 

 [5]
 

 . Because per session work is predetermined and predictable, it is readily distinguishable from the services that were held to be nonpensionable in
 
 Matter of Martineau v McCall (217
 
 AD2d 847,
 
 lv denied
 
 86 NY2d 711 [1995]),
 
 Matter of Cannavo v Regan
 
 (122 AD2d 523,
 
 lv denied
 
 68 NY2d 612 [1986]) and
 
 Matter of Mowry v New York State Empl. Retirement Sys.
 
 (54 AD2d 1062).