# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 6
In the Matter of Bruce D. Bohlen, et al.,
  Respondents,
  v.
Thomas P. DiNapoli, &c., et al.,
  Appellants.

Sarah L. Rosenbluth, for appellants.
George J. Szary, for respondents.

FAHEY, J.:

Government pensions are based on employees' regular average salaries. All New York State employees rely on the integrity of the pension system. The protection against its manipulation is one of the Comptroller's primary responsibilities.

- 1 -

Here, we uphold a determination of the Comptroller's Office that a Port Authority compensation adjustment program artificially enhanced certain employees' final average salaries so as to increase their retirement benefits, and that payments made pursuant to the program were not pensionable compensation under Retirement and Social Security Law § 431 (3), which provides that "any additional compensation paid in anticipation of retirement" must be excluded from final average salary calculations.

I.

Bruce Bohlen and ten other employees of the Port Authority of New York and New Jersey ("petitioner employees" or "the executive employees") held executive positions at the agency in the aftermath of the terrorist attacks of September 11, 2001. The Port Authority is a participating employer in the New York State and Local Employees' Retirement System ("the Retirement System").

In 2002, the Port Authority's Board of Commissioners approved participation in a statutory retirement incentive program that offered additional pension benefits to certain public employees if they retired before the end of the year (see L 2002, ch 69). The purpose of the retirement incentive was "to achieve cost-savings for public employers and to avoid layoffs of public employees in th[e] time of fiscal need" following the September 11 attacks (L 2002, ch 69, § 2). Petitioner employees, as key executives, were exempted from the retirement incentive program, by determination of the Port Authority's Executive Director.

In the same year, petitioner employee Louis LaCapra, the agency's Chief Administrative Officer, recommended to the Executive Director "a compensation adjustment program" that would "achieve [an] equivalent level of pension benefit for"

employees, including LaCapra himself, who would be exempted from the retirement incentive. A Retirement System member's pension benefit depends upon their final average salary, i.e., "the average salary earned by . . . a member during any three consecutive years which provide the highest average salary" (Retirement and Social Security Law § 443 [a]). LaCapra suggested a salary increase to replicate the level of pension benefit that the executive employees would not otherwise be able to receive. The Executive Director adopted the recommendation, describing the proposal to the Board as a "retention program."

In December 2002, petitioner employees signed letter agreements acknowledging their exemption from the retirement incentive and their acceptance of the "retention program," which was described as being "designed to provide a limited number of staff members with a 'parity' benefit." Petitioner employees were not required to remain with the Port Authority for any particular period of time after the end of the year in order to receive the salary increases. If the key employees "remain[ed] employed for three additional years, [their] pension calculation[s] . . . would be roughly equivalent to the calculation[s] if [they] had been eligible to retire with the incentive at the present time." The executive employees received the promised pay raises, which ranged from 4.5% to 11% of salary and were included in biweekly payroll checks, for periods ranging from nine months to ten years.

Initially, eight petitioner employees who retired were awarded benefits that included the pay raises in the calculations of their final average salaries. In 2012, however, LaCapra and the remaining two petitioner employees submitted retirement applications, and

subsequently all petitioner employees received determination letters from the Retirement System, stating that the compensation adjustment payments should have been, or (in the case of the last three) would be, excluded from final average salaries for pension calculation purposes. The Retirement System explained that the allowances were "retention payments made to delay retirement," and constituted "compensation paid in anticipation of eventual retirement." In that regard, Retirement and Social Security Law § 431 provides that "[i]n any retirement or pension plan to which the state or municipality thereof contributes, the salary base for the computation of retirement benefits shall in no event include . . . any additional compensation paid in anticipation of retirement" (Retirement and Social Security Law § 431 [3] [emphasis added]).

Petitioner employees requested a hearing and reconsideration, the cases were consolidated, and the employees agreed to be bound by the Comptroller's ultimate determination of petitioner Bohlen's challenge. Petitioner employees maintained that the payments were designed to discourage, rather than encourage, retirement and hence, as they saw it, were not made "in anticipation of retirement." They also argued that the application of Retirement and Social Security Law § 431 (3) to the six petitioner employees, including Bohlen, who had joined the Retirement System before the statute's June 17, 1971 effective date, violates Article V, § 7 of the State Constitution.

The Hearing Officer found that the Port Authority had given "each of the applicants additional compensation to increase their final average salaries so that their pensions would equal what their pensions would have been had they been eligible for the retirement incentive and taken it in December 2002." The Hearing Officer ruled that the Retirement

System had acted reasonably in excluding the allowance payments from final average salary, concluding that the Retirement System "had the authority to determine what payments were excludable as . . . made in anticipation of eventual retirement . . . , whether the applicant joined the Retirement System before or after the effective date of § 431." The Executive Deputy Comptroller adopted these findings and conclusions and denied petitioner employees' applications for reconsideration.

## II.

Petitioners, who comprise the surviving executive employees and the beneficiaries of two of the executive employees who have died, commenced this CPLR article 78 proceeding in Supreme Court, challenging the determination of the Comptroller's Office. Petitioners sued that Office; the Retirement System; the Comptroller, Thomas P. DiNapoli, who is also the administrative head of the Retirement System; and the Executive Deputy Comptroller, Colleen C. Gardner. Petitioners argue that the Comptroller's decision is not supported by substantial evidence and that the statute does not apply to the employees who had joined the Retirement System prior to June 17, 1971. Supreme Court transferred the matter to the Appellate Division pursuant to CPLR 7804 (g).

The Appellate Division annulled the Comptroller's determination, granted the petition, and remitted the matter to the Retirement System (164 AD3d 1038 [3d Dept 2018]). The Court concluded that the "payments are more appropriately characterized as . . . made to delay petitioners' retirements, not to artificially inflate their final average salary in anticipation of retirement" (164 AD3d at 1040) and found it "telling that both the

Retirement System and the Hearing Officer . . . characterized the payments as having been made 'in anticipation of <u>eventual</u> retirement' (emphasis added)" (<u>id.</u>).

Two dissenting Justices would have confirmed the Comptroller's determination. The dissent reasoned that "[a]lthough the . . . payments were clearly intended to induce petitioners to remain employed . . . , the . . . record evidence amply supports the conclusion that the primary purpose . . . was to provide petitioners with an elevated level of compensation in retirement, whenever that might be" (164 AD3d at 1042-1043 [Clark, J., dissenting]). The dissenting Justices also rejected petitioners' contention based on Article V, § 7 of the State Constitution, noting the absence of a vested right (<u>see</u> <u>id.</u> at 1043-1044 [Clark, J., dissenting]).

Respondents appealed as of right, pursuant to CPLR 5601 (a). We now reverse.

III.

We must determine whether the Comptroller's determination is supported by substantial evidence (<u>see</u> CPLR 7803 [4]; <u>Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County</u>, 34 NY2d 222, 231 [1974]). As the Appellate Division has often reiterated, " 'the Comptroller is vested with exclusive authority to determine applications for retirement benefits and such determination, if supported by substantial evidence, must be upheld' " (<u>Matter of Chichester v DiNapoli</u>, 108 AD3d 924, 925 [3d Dept 2013], quoting <u>Matter of Davies v New York State & Local Police & Fireman Retirement Sys.</u>, 259 AD2d 912, 913 [1999], <u>lv denied</u> 93 NY2d 810 [1999]). As such, we must decide whether there is substantial evidence in the record to support the determination of the Comptroller's Office that the

compensation adjustment payments constituted "additional compensation paid in anticipation of retirement" (Retirement and Social Security Law § 431 [3]). In order to answer that question, however, we must first determine the meaning of the phrase "in anticipation of retirement."

Retirement and Social Security Law § 431, enacted in 1971, provides:

"In any retirement or pension plan to which the state or municipality thereof contributes, the salary base for the computation of retirement benefits shall in no event include any of the following earned or received, on or after April first, nineteen hundred seventy-two:
1. lump sum payments for deferred compensation, sick leave, accumulated vacation or other credits for time not worked,
2. any form of termination pay,
3. any additional compensation paid in anticipation of retirement, or
4. that portion of compensation earned during any twelve months included in such salary base period which exceeds that of the preceding twelve months by more than twenty per centum." (Retirement and Social Security Law § 431.)

Under the statute, " 'retirement benefits are to be computed on the basis of an employee's regular salary and not on any kind of termination pay or other form of additional compensation paid in anticipation of retirement' " (Davies, 259 AD2d at 913-914, quoting Matter of Tooley v McCall, 252 AD2d 794, 794-795 [3d Dept 1998]; see also e.g. Matter of Green v Regan, 103 AD2d 878, 878 [3d Dept 1984]). Additional compensation made to employees with the goal of increasing their final average salaries and enhancing their pensions constitutes compensation "in anticipation of retirement" because it takes retirement benefits into account and is designed precisely to enhance them. We have recognized that the statute was intended to curb abuses of the retirement system, specifically the practice of including certain compensation to enhance final average salary

prior to retirement (see Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys. (98 NY2d 575, 582 [2002]). In short, the "legislative intention [was] to guard against Retirement System members manipulating their pay to inflate their final average salaries," so as to increase their pensions (Matter of Hohensee v Regan, 138 AD2d 812, 814 [3d Dept 1988]; see also e.g. Matter of Hughes v McCall, 245 AD2d 904, 905 [3d Dept 1997]).

The Bill Jacket confirms that the principal legislative intent was to prohibit artificial increases in salary that enhance pensions. In particular, the Committee on Rules Budget Report explained the purpose as follows:

> "The pension amendment relating to the salary base would eliminate some of the major abuses resulting when 'final average salary' is unduly raised in order to increase pensions. (New York City Transit System employees, for example, work many hours overtime in their last year before retirement to substantially increase retirement benefits; termination pay is being negotiated as a means of raising final average salary in some jurisdictions.) Inasmuch as lifetime retirement benefits are designed to provide an income related to actual earnings during employment, it is important to exclude unusually large payments from the base used to compute such benefits." (Comm on Rules Budget Report, Bill Jacket, L 1971, ch 503 at 10 [emphasis added].)

Often such pension boosting is done to induce a petitioner to retire early by promising an enhanced pension (see e.g. Green, 103 AD2d at 879), but a salary adjustment intended to increase an employee's pension may be offered in other contexts, including in exchange for a promise not to retire, as in Matter of Thompson v New York State Teachers' Retirement Sys. (78 AD3d 1456 [3d Dept 2010] [applying statutory scheme, set out in Education Law § 501 (11) (b) and 21 NYCRR 5001.1 (d), excluding payments received in anticipation of termination of employment]). In Thompson, the Appellate Division upheld a determination that salary increases were made in anticipation of retirement when

designed to "provide administrators with an incentive to continue [working] beyond retirement eligibility, and . . . to partially offset the loss of [a] retirement incentive" (Thompson, 78 AD3d at 1457).

Here, the Appellate Division presented a false dichotomy in suggesting that the compensation adjustments could not be both "made to delay petitioners' retirements" and designed "to artificially inflate their final average salary in anticipation of retirement" (164 AD3d at 1040). On the contrary, salary increases may be designed at once to discourage imminent retirement and increase pension benefits. If a salary adjustment is designed to boost pension benefits, then it is excludable under Retirement and Social Security Law § 431 (3). Whether the raises were intended to encourage earlier or later retirement is not dispositive.

Petitioners cite the above-quoted Budget Report to support the theory that the legislative intent was to prevent inflation of final average salary only "in periods immediately prior to retirement." We disagree. Although the Budget Report mentions employees who "work many hours overtime in their last year before retirement," this is expressly given only as an "example" and indeed is presented in a parenthetical. Moreover, petitioners' theory is inconsistent with the legislative goals. Petitioners offer no reason why the legislature would have been concerned with the pension consequences of an artificial salary inflation that occurred over one year and untroubled by an artificial salary inflation that occurred over several years. More broadly, given that the legislative focus was the fiscal concern to prevent artificial boosting of pensions, there would have been no

reason for the legislature to prohibit pension enhancement when it is used as an inducement to retirement and not also when it is used as an incentive to delay retirement.

Petitioners also rely on Matter of Van Haneghan v New York State Teachers' Retirement Sys. (6 AD3d 1019 [3d Dept 2004]) and Matter of Curra v New York State Teachers' Retirement Sys. (30 AD3d 666 [3d Dept 2006]), where the Appellate Division held that particular salary increases intended to delay employees' retirements were pensionable. These decisions contain no findings that the payments were designed to boost pension benefits, and therefore do not support petitioners' position here. Indeed, the Curra Court expressly found that the compensation did not "serv[e] to artificially inflate petitioner's final average salary" (Curra, 30 AD3d at 666) and instead "represent[ed] the value of his services to the [employer] during the relevant period of time" (id.). Where enhanced compensation given in exchange for a promise not to retire was paid in exchange for continued valuable work and not with the design to inflate an employee's pension, the compensation may be pensionable.

Similarly, petitioners' reliance on Weingarten (98 NY2d 575), in which we concluded that certain compensation earned by teachers in New York City public schools could be added to the teachers' pensionable salary base, is to no avail. That case involved a form of hourly compensation for after-hours employment -- so-called "per session" compensation -- that was "clearly not a scheme designed to funnel additional compensation to soon-to-be retiring teachers in order to circumvent the strictures of the retirement system" (id. at 584) and indeed bore no relation to "service termination" (id. at 583). Consequently, Weingarten is not instructive on the question of whether compensation

adjustments are pensionable if they are simultaneously designed to boost pension benefits and delay retirement. As we have noted, the legislative history resolves that question.

The Appellate Division also erred in concluding that an increase made in anticipation of "eventual retirement" or one made without a specific retirement date in view is not made "in anticipation of retirement." While it is true that the word "eventual" does not appear in Retirement and Social Security Law § 431 (3), the statutory language is broad, with no temporal limitation. Compensation payments made "in anticipation of retirement" embrace those made in anticipation of imminent retirement and those made in expectation of retirement at an uncertain date in the future. No such manipulations of retirement benefits are pensionable.

IV.

Applying the foregoing analysis, we must now ask whether there is substantial evidence in the record to support the Comptroller's determination that the Port Authority's compensation adjustment program constituted "additional compensation paid in anticipation of retirement" (Retirement and Social Security Law § 431 [3]). Under this standard, where substantial evidence exists to support the administrative agency's determination, a court may not substitute its judgment for that of the agency, even if there is evidence supporting a contrary conclusion (see Matter of Toys R Us v Silva, 89 NY2d 411, 423 [1996]; Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983]; Matter of Purdy v Kreisberg, 47 NY2d 354, 358 [1979], Pell, 34 NY2d at 232). In order to determine whether the purpose of the compensation was "to circumvent the provisions of Retirement and Social Security Law § 431," courts " 'must look to the

substance of the transaction and not to what the parties may label it' " (Davies, 259 AD2d at 914, quoting Green, 103 AD2d at 878-879).

Here, the record contains substantial evidence supporting the Comptroller's determination that the Port Authority provided the compensation adjustments to artificially increase the executive employees' final average salaries so that, upon retirement, they would receive pension increases roughly equivalent to those they would have received under the retirement incentive program. Indeed, the letter agreements signed by petitioner employees directly referred to a program "designed to provide a limited number of staff members with a 'parity' benefit" to make their "pension calculation[s] . . . roughly equivalent to the calculation[s] if [they] had been eligible to retire with the incentive." Plainly, substantial evidence supports the conclusion that the compensation, by design, was made in anticipation of petitioner employees' retirement within the meaning of the statute.

## V.

Finally, petitioners maintain, in the alternative, that the six employees who joined the Retirement System prior to the effective date of Retirement and Social Security Law § 431 (3) are not bound by it. Petitioners rely on Article V, § 7 of the State Constitution, which provides that "[a]fter [July 1, 1940], membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired" (NY Const Art V, § 7 [a]).

In a series of cases in the years immediately following the enactment of Retirement and Social Security Law § 431, this Court decided the issue that underlies petitioners' alternative argument. If an individual has "acquired a vested right to [a] benefit, . . . that

benefit may not . . . be constitutionally impaired" (Kranker v Levitt, 30 NY2d 574, 575 [1972]). Kranker held that Retirement and Social Security Law § 431 (1), which eliminated inclusion of cash payments for accumulated vacation credits in determining salary bases for computation of retirement benefits, violates Article V, § 7 of the State Constitution, if retroactively applied to individuals who had benefited from a 1957 decision of the Comptroller to include cash payments for accumulated vacation credits. "[T]he crux of [the Kranker] decision" was that "[p]rior to enactment of th[e challenged] section, accumulated vacation credits had been consistently included in the calculation of base salary for pension purposes" as a matter of "established pattern" (Matter of Hessel v New York City Employees' Retirement Sys., 33 NY2d 381, 385 [1974]). Put another way, Kranker emphasized "the limited effect of" the Constitutional provision "as creating a vested right . . . only if based on administrative construction and practice for a 'given' or extended period of time, and then, only to the extent reasonable" (Matter of Weber v Levitt, 34 NY2d 797, 800 [1974]). Here, as the Appellate Division dissent noted, petitioners have failed to show a pre-1971 practice of including payments made in anticipation of retirement in the calculation of final average salary.

Petitioners respond that there was presumably such a prior practice, because otherwise there would have been no need to introduce the 1971 legislation. However, as the Budget Report indicates, the statute's enactment does not point to a general practice, sanctioned by the law, of including such payments, but rather the fact that some employees and employers were manipulating the system in a manner the legislature sought to

discourage.  As we noted in <u>Weingarten</u>, the 1971 "legislative action curb[ed] . . . perceived abuses" in which final average salary was manipulated (<u>Weingarten</u>, 98 NY2d at 582).

Petitioners cite <u>Kleinfeldt v New York City Employees' Retirement Sys.</u> (36 NY2d 95 [1975]), which held that Retirement and Social Security Law § 431 (4) violates article V, section 7 of the State Constitution if "applied to any civil service employee who became a member of a public retirement system before the statute's effective date."  The <u>Kleinfeldt</u> Court held that "the statutory limitation may not be applied to those who became members before June 17, 1971" (<u>id.</u> at 98).  However, <u>Kleinfeldt</u> is readily distinguishable.

Retirement and Social Security Law § 431 (4) provides that the "portion of compensation earned during any twelve months included in such salary base period which exceeds that of the preceding twelve months by more than twenty per centum" is excludable from salary base.  Until Retirement and Social Security Law § 431 (4) enacted a cap on salary increases, for the purposes of calculating final average salaries, the payments at issue were legally included in base salaries for purposes of pension calculation. Indeed, as in <u>Kranker</u>, the Court's decision in <u>Kleinfeldt</u> was based on fairness toward a plaintiff with a long-settled expectation that his full salary would count towards his pension benefits (see <u>Kleinfeldt</u>, 36 NY2d at 100-101).  That is not the case here.

For these reasons, petitioners' alternative argument lacks merit.

Accordingly, the judgment of the Appellate Division should be reversed, with costs, and the petition dismissed.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Judgment reversed, with costs, and petition dismissed. Opinion by Judge Fahey. Chief Judge DiFiore and Judges Rivera, Stein, Garcia, Wilson and Feinman concur.

Decided February 13, 2020