Matter of Glozek v DiNapoli (2023 NY Slip Op 05774)

Matter of Glozek v DiNapoli

2023 NY Slip Op 05774

Decided on November 16, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 16, 2023

536200
[*1]In the Matter of James Glozek, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, et al., Respondents.

Calendar Date:October 13, 2023

Before:Egan Jr., J.P., Clark, Ceresia, McShan and Powers, JJ.

Davis & Ferber LLP, Islandia (Christopher S. Rothemich of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kevin C. Hu of counsel), for respondents.

McShan, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller, among other things, recalculating petitioner's final average salary.
Petitioner was employed as a police officer for the Village of Northport, Suffolk County pursuant to a series of collective bargaining agreements (hereinafter CBA) and employment contracts negotiated by the Northport Police Benevolent Association (hereinafter PBA) from 1989 until his retirement on March 30, 2019, when he began to collect his pension. On April 5, 2021, petitioner received a final determination by respondent New York State and Local Employees Retirement System advising that, based upon payroll information from his employer, three $25,000 lump sum payments (totaling $75,000) that he received on March 1 of each year from 2017 through 2019 were not includable in his final average salary for purposes of calculating his pension benefits. The determination was based upon the finding that the lump sum payments made pursuant to an October 17, 2017 memorandum of agreement (hereinafter the 2017 agreement) between the Village and the PBA were not for "time worked" and, as such, were not pensionable and were excluded from the computation of his final average salary pursuant to Retirement and Social Security Law § 443 (a). This resulted in a recalculation of and reduction in his pension benefits and a directive that the overpayments be recouped from his pension payments. Petitioner sought review of that determination and, following a hearing, a Hearing Officer agreed that the lump sum payments had been properly excluded from the calculation of petitioner's final average salary. Respondent Comptroller adopted the Hearing Officer's decision, prompting petitioner to commence this proceeding pursuant to CPLR article 78 challenging that determination.
"[T]he Comptroller is vested with exclusive authority to determine applications for retirement benefits and such determination, if supported by substantial evidence, must be upheld" (Matter of Bohlen v DiNapoli, 34 NY3d 434, 441 [2020] [internal quotation marks and citations omitted]; see Retirement and Social Security Law § 74 [b]). To that end, "where substantial evidence exists to support the [Comptroller's] determination, a court may not substitute its judgment for that of the agency, even if there is evidence supporting a contrary conclusion" (Matter of Bohlen v DiNapoli, 34 NY3d at 445). Petitioner bears the burden of establishing his entitlement to the inclusion of the lump sum payments in the calculation of his final average salary (see Matter of Ratzker v Office of the N.Y. State Comptroller [N.Y. State & Local Retirement Sys.], 106 AD3d 1321, 1322-1323 [3d Dept 2013], lv denied 22 NY3d 854 [2013]).
The dispositive question is whether the lump sum payments were properly excluded from petitioner's final average salary as payments or credits for time not [*2]worked. "Consistent with the provisions of the Retirement and Social Security Law, a member's retirement benefit is based upon his or her final average salary, i.e., 'the average salary earned by such . . . member during any three consecutive years which provide the highest average salary' " (Matter of Chichester v DiNapoli, 108 AD3d 924, 925 [3d Dept 2013], quoting Retirement and Social Security Law § 443 [a]; see Retirement and Social Security Law § 302 [9] [a]). Annual compensation is defined as "[t]he salary or wages annually earnable by a member" (Retirement and Social Security Law § 302 [2] [a]). In order to avoid the artificial inflation of retirement pensions, which "are based on employees' regular average salaries" (Matter of Bohlen v DiNapoli, 34 NY3d at 437 [emphasis added]), certain payments are excluded from the salary base used to compute retirement benefits, including "any form of termination pay" (Retirement and Social Security Law § 431 [2]), "additional compensation paid in anticipation of retirement" (Retirement and Social Security Law § 431 [3]) and "lump sum payments for deferred compensation, sick leave, accumulated vacation or other credits for time not worked"(Retirement and Social Security Law § 431 [1] [emphasis added]; see Matter of Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys., 98 NY2d 575, 582-583 [2002]).
Although we need not defer to the Comptroller's interpretation of the statutory exclusion for lump sum "credits for time not worked" (see Matter of Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys., 98 NY2d at 579-580), we are in agreement with the Comptroller's determination as applied to the facts of this matter. The evidence and testimony at the hearing established that, in 2010, the Village and the PBA renegotiated their CBA, in effect from 2004 through 2009 (hereinafter the 2004 CBA),[FN1] and entered a memorandum of agreement (hereinafter the 2010 agreement), retroactive to 2009 and in effect until 2022, that included a pension enhancement for members who work beyond 20 years. In exchange, to offset the cost of the new pension plan, the PBA agreed to forgo their scheduled annual 3.5% salary increases in years one and two of the 2010 agreement, i.e., 2009 and 2010,[FN2] and the salary increases totaling 7% were deferred until the last three years of the agreement, i.e., until 2019 through 2021, when the members would receive annual salary increases of 5.5%, 5.5% and 6.5%, respectively. In 2017, facing the prospect of implementing these costly salary increases, the Village renegotiated the 2004 CBA and 2010 agreement, which were extended until 2028, and agreed to pay each member a lump sum of $25,000 on March 1 in 2017, 2018 and 2019, for a total of $75,000; in return, the members agreed to receive a lower salary increase of 2.75% in 2018 through 2028.
It is significant that nothing in the 2017 agreement specified conditions precedent to the receipt of this one-time bonus paid [*3]over three years which, under the terms of the 2017 agreement, were payable to "[a]ll employees" who were PBA members on March 1 of each year (2017-2019) regardless of the hours or weeks worked that year, years of service or any other condition. The attorney representing the PBA testified that the lump sums were paid to "every member of the PBA," i.e., to "everybody on the job" and, while he stated that it was his understanding that "you had to work the [fiscal] year before" as an officer to be eligible for the lump sum payments, the 2017 agreement did not so provide. The Village treasurer acknowledged that the 2017 agreement did not specify qualifying factors for eligibility to receive the lump sum payments. Although the PBA attorney, like the Village treasurer, testified that the three-year lump sum was not designed to increase final average salaries, the attorney conceded that, for PBA members closer to retirement age, the three-year lump sum — if added to their base salary — could raise their final average salary and thereby incentivize retirement.[FN3]
The Comptroller's determination here is consistent with the legislative purpose for the exclusion of lump sum payments not made for work performed, which is to prevent artificial increases to base salaries that enhance pensions and ensure that " 'lifetime retirement benefits . . . provide an income related to actual earnings during employment' " (Matter of Bohlen v DiNapoli, 34 NY3d at 442 [emphasis added], quoting Commn on Rules Budget Report, Bill Jacket, L 1971, ch 503 at 10). Although the 2017 agreement denominated the lump sum payments as a "wage payment," and the PBA intended for them to be pensionable, courts reviewing the classification of compensation "look to the substance of the transaction and not to what the parties may label it" (Matter of Bohlen v DiNapoli, 34 NY3d at 445 [internal quotation marks and citations omitted]; see Matter of Franks v DiNapoli, 53 AD3d 897, 898 [3d Dept 2008]). The fact that the contractual wage increases for years 2019-2021 would have been included in the final average salary had they remained in the 2010 agreement, as the Retirement System's expert acknowledged, did not compel a finding that the materially distinguishable lump sum payments were includable given that the wage increases, unlike the lump sum payments, would have increased, and become part of, petitioner's regular salary. All told, substantial evidence supports the Comptroller's determination that the lump sums paid in 2017, 2018 and 2019 were not part of petitioner's regular salary but, rather, were bonuses paid early, in lieu of higher future salary increases in 2019 through 2021 and were not tied to work performed in the years the lump sum payments were made (see Matter of Schuyler v New York State & Local Employees' Retirement Sys., 158 AD3d 909, 911 [3d Dept 2018]). To the extent that different inferences could be drawn from the testimony and credibility issues were presented, this was for [*4]the Comptroller to resolve (see Matter of Franks v DiNapoli, 53 AD3d at 898).
Egan Jr., J.P., Clark, Ceresia and Powers, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: The original 2004 CBA is not in the record.

Footnote 2: The PBA attorney explained that the lump sum payments were taken as a tradeoff for lower future wage increases, as a result of which the PBA members calculated they lost about 10% of their future career wages; the village treasurer estimated that this modification saved the Village approximately $5 million and that the motivation for the tradeoff was to spare the Village the expense of future, compounded wage increases.

Footnote 3: As a case in point, petitioner and other members retired right after receiving the third lump sum payment.