Matter of Gallante v DiNapoli (2024 NY Slip Op 03370)

Matter of Gallante v DiNapoli

2024 NY Slip Op 03370

Decided on June 20, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 20, 2024

CV-23-1408
[*1]In the Matter of Tory Gallante, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, et al., Respondents.

Calendar Date:April 25, 2024

Before:Egan Jr., J.P., Aarons, Fisher, McShan and Mackey, JJ.

Gleason, Dunn, Walsh & O'Shea, Albany (Ronald G. Dunn of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kevin C. Hu of counsel), for respondents.

Aarons, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller denying petitioner's application for recalculation of his final average salary.
After a 30-year career as a firefighter, petitioner retired as Chief of the Arlington Fire District in March 2019 and began collecting retirement benefits. In 2020, the New York State and Local Retirement System notified petitioner that, after receiving salary information from the District, certain earned compensation would be excluded from the calculation of his final average salary. Accordingly, petitioner's monthly retirement benefit amount was reduced, and petitioner was advised that he would be charged with an overpayment. Petitioner applied for a hearing and redetermination of his retirement benefits (see Retirement and Social Security Law §§ 74 [d]; 374 [d]). Following a hearing, the Hearing Officer determined that the Retirement System properly excluded petitioner's overtime pay, a staff development stipend and a portion of holiday pay from his final average salary. Respondent Comptroller adopted the Hearing Officer's findings of fact and conclusions of law and denied petitioner's application, prompting this CPLR article 78 proceeding.
The Comptroller is vested with the exclusive authority to resolve applications for retirement benefits and the "determination must be upheld if [the] interpretation of the controlling retirement statute is reasonable and the underlying factual findings are supported by substantial evidence" (Matter of Schwartz v McCall, 300 AD2d 887, 888 [3d Dept 2002] [internal citations omitted]; accord Matter of O'Brien v DiNapoli, 116 AD3d 1124, 1125 [3d Dept 2014]). "Consistent with the provisions of the Retirement and Social Security Law, a member's retirement benefit is based upon his or her final average salary, i.e., the average salary earned by such member during any three consecutive years which provide the highest average salary" (Matter of Glozek v DiNapoli, 221 AD3d 1231, 1233 [3d Dept 2023] [internal quotation marks, ellipsis and citations omitted]; see Retirement and Social Security Law § 2 [9]).
Regarding the payment of overtime, General Municipal Law § 90 authorizes governing boards to provide for the payment of overtime compensation to public officers and public employees who "are required to work in excess of their regularly established hours of employment" and mandates that the payments be considered as salary "for any of the purposes of any pension or retirement system." This language must be strictly construed in view "of the constitutional provision against the expenditure of public funds absent express statutory authority" (Conrad v Regan, 175 AD2d 629, 629-630 [4th Dept 1991], lv denied 78 NY2d 860 [1991]; see NY Const, art VIII, §1; Matter of Murray v Levitt, 47 AD2d 267, 269 [3d Dept 1975], lv denied 37 NY2d 707 [1975]). Consequently, "overtime [*2]payments are not duly authorized or considered as salary within the meaning of General Municipal Law § 90 unless paid pursuant to 'an overtime plan setting forth in detail the terms, conditions and remuneration for such employment' " (Matter of Shames v Regan, 132 AD2d 743, 744 [3d Dept 1987] [emphasis omitted], quoting Matter of Murray v Levitt, 47 AD2d at 269; see Matter of Mowry v New York State Employees' Retirement Sys., 54 AD2d 1062, 1063 [3d Dept 1976]).
Petitioner first contends that the Comptroller's interpretation of General Municipal Law § 90 is unreasonable. We disagree. At the hearing, the assistant director of the Retirement System's Benefit Calculation and Disbursements Bureau explained that, under General Municipal Law § 90, salary may only include overtime payments that are part of a comprehensive written overtime plan. To determine whether petitioner's employment agreements with the Arlington Fire District Board of Fire Commissioners met the requirements of such a plan, the Retirement System considered five factors: (1) the amount of compensation to be paid; (2) whether there is a cap on the compensation; (3) whether the plan provides when and how the payments are made; (4) whether approval is required prior to the overtime being performed; and (5) whether the plan provides that the pay is for work performed beyond the regular workday. In our view, these factors rationally correspond to statutory language authorizing overtime for employees who "are required to work in excess of their regularly established hours of employment" at either their regular rate of pay or some other rate set by the governing board (General Municipal Law § 90 [emphasis added]; see Matter of Bascom v McCall, 221 AD2d 879, 880 [3d Dept 1995]; Conrad v Regan, 175 AD2d at 629-630; Matter of Shames v Regan, 132 AD2d at 745).
Next, and contrary to petitioner's view, the Comptroller rationally excluded petitioner's overtime payments because the employment agreements (i) did not prescribe when and how overtime would be worked, (ii) did not identify petitioner's regularly scheduled hours of employment, and (iii) did not indicate whether prior approval was required for the performance of overtime work. The agreements established that petitioner's "[w]orking hours will be 40 hours per week on a five day a week basis." Although "[t]he typical work week is Monday through Friday," petitioner had discretion to vary his weekly schedule "for the best use to fit the District's needs." Further, neither the agreements nor the Board's eight-hour workday resolution specified which hours of the day petitioner was required to work. Taken together, the Comptroller rationally concluded that petitioner did not have "regularly established hours" within the meaning of General Municipal Law § 90.
As to overtime requirements, the agreements specified that any work in excess of 40 hours per week would be paid with compensatory time. According to the record and representations at oral [*3]argument, compensatory time was generally calculated at petitioner's hourly rate of pay. Petitioner testified that he earned compensatory time for off-hours meetings and non-emergency work. Emergency call-back hours — time spent fighting fires outside of the regular workday — were compensated at time and a half pay. Although these provisions authorized petitioner to work overtime, they did not specify any terms or conditions that would require him to do so (see General Municipal Law § 90; Conrad v Regan, 175 AD2d at 629-630). Given the absence of a provision for prior approval — a finding that petitioner does not dispute — the Comptroller appropriately found that the agreements do not cover when or how petitioner worked overtime.[FN1] In sum, because the employment agreements appear to have given petitioner a "free hand in determining when and for how long [he] would work" (Matter of Murray v Levitt, 47 AD2d at 269), the Comptroller's determination excluding petitioner's overtime payments from his final average salary is reasonable, supported by substantial evidence and will not be disturbed (see Matter of Shames v Regan, 132 AD2d at 745; Matter of Mowry v New York State Employees' Retirement Sys., 54 AD2d at 1063).
Petitioner also challenges the exclusion of the increased compensation paid to him in 2019 for staff development from his final average salary. "Pursuant to the Retirement and Social Security Law, the salary base used to compute retirement benefits shall not include . . . compensation paid in anticipation of retirement" (Matter of Franks v DiNapoli, 53 AD3d 897, 898 [3d Dept 2008] [internal quotation marks and citation omitted]; see Retirement and Social Security Law § 431 [3]; Matter of Smith v DiNapoli, 167 AD3d 1208, 1209-1210 [3d Dept 2018]). "In determining what constitutes . . . compensation paid in anticipation of retirement, we must look to the substance of the transaction and not to what the parties may label it" (Matter of Green v Regan, 103 AD2d 878, 878-879 [3d Dept 1984]; see Matter of Smith v DiNapoli, 167 AD3d at 1210; Matter of Chichester v DiNapoli, 108 AD3d 924, 925 [3d Dept 2013]). The record reflects that petitioner informed the Board in 2018 that he was planning on retiring. By stipulation entered into in January 2019, the Board increased petitioner's hourly rate of pay by $15 effective January 7, 2019 to March 31, 2019. According to the stipulation and testimony, the extra compensation was to train his successor — a newly appointed Deputy Chief — and staff before he retired and took with him all of his institutional knowledge. Yet, the record shows petitioner's job already included planning and directing the training of staff and that petitioner had not received staff development stipends in the past. Further, the stipend was not limited to the time spent on work it was intended to compensate — it was essentially a $15 per hour raise. Accordingly, substantial evidence supports the Comptroller's determination that the [*4]January 2019 pay increase constituted compensation in anticipation of retirement and was properly excluded from the calculation of petitioner's final average salary (see Matter of Chichester v DiNapoli, 108 AD3d at 926; Matter of Franks v DiNapoli, 53 AD3d at 898).
Finally, the Retirement System concedes, and we agree, that the calculation of petitioner's final average salary improperly failed to take into account all 144 hours of his earned holiday pay. Accordingly, the matter must be remitted for a recalculation of petitioner's final average salary that includes 144 hours of holiday pay. Petitioner's remaining contentions, to the extent not specifically addressed, have been examined and found to be without merit.
Egan Jr., J.P., Fisher, McShan and Mackey, JJ., concur.
ADJUDGED that the determination is modified, without costs, by annulling so much thereof as excluded certain holiday pay from the calculation of petitioner's final average salary; petition granted to that extent and matter remitted to respondent Comptroller for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.

Footnotes

Footnote 1: Petitioner testified that, under the District's time tracking system, he would fill out a form indicating the overtime he had worked on a given day either immediately after completing the work or the day after. According to petitioner, the Board had the option of reviewing payroll records at their twice-monthly meetings after the payroll process was complete. In other words, this system "does not set out any procedure for the regulation of overtime" worked by petitioner (Matter of Shames v Regan, 132 AD2d at 745), and therefore does not affect our conclusion.