Matter of Ballard v DiNapoli
2026 NY Slip Op 03493
June 4, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Donald Ballard et al., Petitioners,
v
Thomas P. DiNapoli, as State Comptroller, et al., Respondents.

Decided and Entered:June 4, 2026
CV-25-0547
Calendar Date: April 22, 2026
Before: Aarons, J.P., Reynolds Fitzgerald, Powers, Corcoran And Ryba, JJ.

DeGraff, Foy & Kunz, LLP, Albany (George J. Szary of counsel), for petitioners.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for respondents.

[*1]
Reynolds Fitzgerald, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller denying petitioners' applications for Retirement and Social Security Law article 15 service retirement benefits.
Members of respondent New York State and Local Retirement System who retire as correction officers with the Department of Corrections and Community Supervision (hereinafter DOCCS) are entitled to benefits under Retirement and Social Security Law article 14 (see Retirement and Social Security Law § 504 [e]). Correction officers are statutorily excluded from receiving benefits under article 15, which applies to members of the Retirement System employed by certain other public employers, including municipalities (see Retirement and Social Security Law § 600 [a] [2] [a]). Because of differences in how benefits are calculated under each article, correction officers may be left with less advantageous pensions than those public employees who qualify under article 15. However, respondents acknowledge a workaround: if a correction officer procures bona fide paid employment with an article 15 employer and then retires, retirement benefits are calculated under article 15, factoring in all of their prior years of service.
Petitioners are former, longtime DOCCS correction officers and members of the Retirement System who were eligible to retire under Retirement and Social Security Law article 14. Before retiring, however, each petitioner purported to obtain municipal employment in the Town of Lewis, Essex County, in order to qualify them for increased retirement benefits under article 15. Petitioners' common connection to the Town of Lewis was its then-Supervisor, James Monty — himself a retired correction officer who personally knew each petitioner from his career at DOCCS. After "donating" $3,500 to the Town,FN1 petitioners were hired as either clerks or park attendants. They then worked two, six-hour days, with each day being in a different pay period, and retired from DOCCS between the first and second day. Each petitioner was paid minimum wage and received paychecks for their work, which they, without exception, never cashed; instead, petitioners endorsed the paychecks and returned them to the Town as a "donation." Following their second day of work, petitioners each applied for retirement benefits under article 15, citing their employment with the Town. Petitioners' applications were approved, and petitioners began receiving article 15 benefits.
After the Retirement System's Pension Integrity Bureau received complaints suggesting that various municipalities were engaged in a scheme to improperly allow correction officers to retire with article 15 benefits, the Bureau began an investigation into the Town. Ultimately, the Bureau determined that petitioners were ineligible for article 15 benefits because their service with the Town "was not bona fide, paid service as an employee[*2]." Each petitioner requested redetermination and a consolidated hearing. After a 10-day hearing, the Hearing Officer, in a comprehensive, 155-page decision, denied petitioners article 15 benefits. The Comptroller upheld the Hearing Officer's determination, and this CPLR article 78 proceeding ensued.
The exclusive authority to determine applications for retirement benefits is vested in the Comptroller, and if the determination is supported by substantial evidence it must be upheld (see Matter of Bohlen v DiNapoli, 34 NY3d 434, 441 [2020]; Matter of Strzepek v DiNapoli, 227 AD3d 1353, 1355 [3d Dept 2024]; see generally CPLR 7803 [4]). "[T]he substantial evidence standard is a minimal standard" that requires "less than a preponderance of the evidence, and demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045-1046 [2018] [internal quotation marks and citations omitted]; see Matter of Dunkez Private Home Care, Inc. v McDonald, 243 AD3d 986, 988 [3d Dept 2025]). "[W]here substantial evidence exists to support the administrative agency's determination, a court may not substitute its judgment for that of the agency, even if there is evidence supporting a contrary conclusion" (Matter of Bohlen v DiNapoli, 34 NY3d at 445; accord Matter of Glozek v DiNapoli, 221 AD3d 1231, 1232 [3d Dept 2023]). Moreover, " 'if the Comptroller's application and interpretation of the relevant statutes are not irrational, unreasonable or contrary to the statutory language, [the] determination will be upheld' " (Matter of Denson v DiNapoli, 129 AD3d 1271, 1272 [3d Dept 2015] [brackets omitted], quoting Matter of Graziose v DiNapoli, 110 AD3d 1205, 1206 [3d Dept 2013]).
Initially, we agree with respondents that, under the Retirement and Social Security Law, paid employment means bona fide paid employment. The Retirement System is authorized to grant pensions for "[g]overnment service" (Retirement and Social Security Law § 41 [b] [1]), which is defined as "[p]aid service" to participating employers (Retirement and Social Security Law § 2 [11]). It follows that uncompensated work does not constitute government service (see Matter of Carabello v DiNapoli, 51 AD3d 1361, 1362 [3d Dept 2008]; Matter of Cassidy v Regan, 160 AD2d 1210, 1211 [3d Dept 1990]; Matter of Catena v New York State Employees' Retirement Sys., 91 AD2d 1138, 1139 [3d Dept 1983]). Furthermore, to obtain service credit under Retirement and Social Security Law article 15, a member must engage in "active service with a participating employer" (Retirement and Social Security Law § 609 [c] [emphasis added]), which means "service while being paid on the payroll of a participating employer" (Retirement and Social Security Law § 601 [a] [emphasis added]). As respondents note, bona fide simply means "authentic, true, or real: genuine" (Merriam-Webster.com Dictionary, bona fide [https://www.merriam-webster.com/dictionary[*3]/bona%20fide]; see also Black's Law Dictionary [12th ed 2024], bona fide [defining "bona fide" as "(m)ade in good faith; without fraud or deceit" or "(s)incere; genuine"]). Thus, contrary to petitioners' argument, respondents' "commonsense — if not self-evident — proposition" that an applicant for article 15 retirement benefits must show bona fide or genuine paid employment does not "impose a new standard or retroactive requirement upon those seeking benefits under Retirement and Social Security Law article 15" (Matter of Strzepek v DiNapoli, 227 AD3d at 1356 n 3; accord Matter of Vladyka v DiNapoli, 238 AD3d 1362, 1365 [3d Dept 2025]). Indeed, awarding pensions based on sham paid employment would conflict with the Legislature's express goal of protecting the Retirement System against fraud (see generally Retirement and Social Security Law § 111).
This case therefore reduces to whether there is substantial evidence to support the Comptroller's determination that petitioners failed to demonstrate bona fide paid employment. The Town Supervisor acknowledged that each petitioner was put on the payroll for only two days, one day each in different pay periods, for the specific purpose of qualifying them for article 15 retirement benefits, and that all correction officers whom he hired in this manner — and no other employees hired by the Town — "donated" $3,500 and their paychecks to the Town. The $3,500 payments were generally made at the beginning of each petitioner's employment. When petitioners were given their respective paychecks, they did not cash them; instead, they endorsed the paycheck and immediately gave it back to the Town.
Significantly, each petitioner's testimony undercut their position that they were bona fide paid employees. Petitioners were generally forthcoming that they only sought employment in the Town because it would qualify them for increased benefits, not for the minimum-wage pay. Regarding their purported donations to the Town, although several petitioners averred that they freely chose to donate because they appreciated that the Town provided them with employment that would make them eligible for Retirement and Social Security Law article 15 benefits, others acknowledged that a donation might afford them favorable treatment with the Town. One petitioner explained that he believed that his donations would be "helpful for [his] retirement and for the [T]own." Another petitioner candidly acknowledged that he hoped his donation would increase his likelihood of getting the job with the Town. A third petitioner initially referred to the $3,500 payment as the "going rate" and indicated that he was willing to pay "[w]hatever it took," before he quickly backtracked to explain that the payment was actually a "donation" that he would have made regardless of whether or not he received the job. Although many petitioners expressed a desire to donate to good causes within the Town, none lived in the Town and several petitioners acknowledged [*4]that they had to drive an hour or more each way to complete their two, six-hour shifts, and indicated that they had no other connection with the Town except for this brief employment relationship. There was also testimony from certain petitioners acknowledging that that they did not know or care where their donations went, or who or what their money benefitted.
Given this and other evidence, there was an ample basis in the record for the Comptroller to reasonably conclude that petitioners' $3,500 donations were not donations at all but, rather, were payments made in exchange for receiving a position in the Town that would qualify them for Retirement and Social Security Law article 15 benefits. Similarly, although petitioners endorsed their paychecks, the Comptroller could reasonably conclude that petitioners were essentially volunteers because they never intended to be paid for their work. On this record, the Comptroller could find that petitioners paid the Town for qualifying employment, not the other way around. Accordingly, it was rational for the Comptroller to conclude that the Town did not provide petitioners with bona fide paid employment and, instead, that these jobs were merely a "fallacious gesture" to qualify petitioners for a more advantageous retirement (Matter of Foote v Regan, 103 AD2d 918, 919 [3d Dept 1984]). Although petitioners point to other evidence in the record that they claim could support a different result, we defer to the Hearing Officer's and Comptroller's credibility determinations (see Matter of Glozek v DiNapoli, 221 AD3d at 1235; Matter of Franks v DiNapoli, 53 AD3d 897, 898 [3d Dept 2008]).
We have reviewed petitioners' remaining contentions and reject them as unavailing.
Aarons, J.P., Powers, Corcoran and Ryba, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1
The $3,500 figure was apparently a rough estimate of the average annual difference between pension benefits under article 14 and article 15.